UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHADRACH ANAPALUM,<br><br>Defendant | Criminal No. 26cr10043<br><br>Violation:<br><br>Count One: Operating an Unlicensed Money Transmitting Business<br>(18 U.S.C. § 1960(a) and (b)(1)(A)-(C))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant SHADRACH ANAPALUM lived in New Jersey.

2. Victim 1 was an 85-year-old widower who lived in Ohio. Victim 1 believed he had met a woman online. The woman was a scammer who told Victim 1 she had inherited gold in another country and needed money from Victim 1 to pay to bring the gold to the United States.

3. Victim 2 was a 66-year-old man who lived in Iowa. Victim 2 believed he had met a woman online. The woman was a scammer who told Victim 2 she had inherited gold in another country and needed money from Victim 2 to pay to bring the gold to the United States. Victim 2 also believed that he was purchasing precious metals and diamonds with the money he sent at the scammer's direction.

4. Co-conspirator 1 ("CC-1") lived in Ghana.

5. Cooperating Witness 1 ("CW-1") lived in Massachusetts.

6. Individual 2 lived in North Carolina.

7. Between at least in or about May 2022 and at least in or about December 2022,

ANAPALUM conducted and controlled an unlicensed money transmitting business in New Jersey and elsewhere. In doing so, ANAPALUM laundered the proceeds of fraud schemes, including investment and romance frauds, by receiving and transferring the proceeds of the schemes through the United States banking system. For his services, ANAPALUM kept a percentage of the funds he received and transferred, typically ten percent.

8. ANAPALUM did not have a money transmitting license in New Jersey, which required money transmitters to hold licenses and punished unlicensed money transmission as a felony. N.J.S.A.17:15C-1, *et seq.*

9. ANAPALUM also did not register with the Department of the Treasury as a money transmitter, as required by federal law. 31 U.S.C. § 5330.

10. ANAPALUM knew the funds he received from Victims 1 and 2 and others and transmitted derived from criminal offenses and were intended to be used to promote and support unlawful activity.

*Victim 1*

11. On or about June 2, 2022, ANAPALUM received a $15,000 wire from Victim 1 into a TD Bank account ANAPALUM controlled with an account number ending in 2556 ("the 2556 Account"). ANAPALUM kept a portion of these funds and transmitted $10,985 to a person in Florida.

12. On or about June 13, 2022, ANAPALUM received a $39,000 wire from Victim 1 into the 2556 Account. ANAPALUM made two withdrawals, one for $3,908 (his fee) and one for $35,084 to transmit to another person.

13. On or about June 22, 2022, ANAPALUM received a $67,000 wire from Victim 1 into the 2556 Account. TD Bank suspected fraud, froze the 2556 Account, and did not release

these funds.

14. On or about September 2, 2022, ANAPALUM deposited a $40,000 check from Victim 1 into a PNC Bank account ANAPALUM controlled with an account number ending in 2257 ("the 2257 Account"). ANAPALUM transmitted $36,000 of these funds to a business in Miami and withdrew $3,600 from the 2257 Account as his fee.

*Victim 2*

15. On or about August 17, 2022, ANAPALUM deposited a $42,000 Cashier's check from Victim 2 into the 2257 Account. ANAPALUM kept a portion of these funds and transmitted $37,800 to a bank account in China.

16. On or about September 14, 2022, ANAPALUM deposited a $50,000 Cashier's check from Victim 2 into the 2257 Account. ANAPALUM kept a portion of these funds and transmitted $45,000 to a bank account in Türkiye.

*Undercover Account*

17. In or about 2022, CW-1 began cooperating with a law enforcement investigation into money laundering.

18. On or about June 22, 2022, CC-1 provided CW-1 with ANAPALUM's name, address, and information for an account that ANAPALUM controlled at TD Bank with an account number ending in 5313 ("the 5313 Account") as an account that CW-1 could use to launder funds.

19. On or about June 24, 2022, ANAPALUM received a $2,200 wire into the 5313 Account from an undercover law enforcement bank account in Massachusetts. TD Bank suspected fraud and froze the 5313 Account before ANAPALUM could withdraw these funds.

20. On or about November 17, 2022, CC-1 provided CW-1 with ANAPALUM's name, address, and information for an account that ANAPALUM controlled at Regents Bank with an

3

account number ending in 6078 ("the 6078 Account") as an account that CW-1 could use to launder funds.

21.     On or about December 2, 2022, ANAPALUM received a $2,200 wire into the 6078 Account from an undercover law enforcement bank account in Massachusetts. ANAPALUM kept a portion of these funds and transmitted $1,960 to Individual 2. Individual 2 kept a portion of these funds and transmitted $1,850 to an undercover law enforcement account CW-1 had identified to CC-1.

22.     During a call on or about November 2, 2022, ANAPALUM agreed with CW-1 that what they were doing was not "legit."

<u>COUNT ONE</u>
Operating an Unlicensed Money Transmitting Business
(18 U.S.C. § 1960(a) & (b)(1)(A)-(C))

The United States Attorney charges:

23. The United States Attorney re-alleges and incorporates by reference paragraphs 1 to 22 of this Information.

24. Between at least in or about May 2022 and at least in or about December 2022, in the District of Massachusetts, the District of New Jersey, and elsewhere, the defendant,

SHADRACH ANAPALUM

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business, which business affected interstate and foreign commerce, and: was operated without an appropriate money transmitting license in a state where such operation is punishable as a misdemeanor or felony under state law, that is, the State of New Jersey; was a business required to register with the Secretary of the Treasury pursuant to Title 31, United States Code, Section 5330; and otherwise involved the transportation and transmission of funds that were known to the defendant to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity.

All in violation of Title 18, United States Code, Section 1960.

## MONEY LAUNDERING FORFEITURE ALLEGATION
(18 U.S.C. § 982(a)(1))

The United States Attorney further alleges:

25. Upon conviction of the offense in violation of Title 18, United States Code, Section 1960, set forth in Count One, the defendant,

SHADRACH ANAPALUM,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to, the following:

    a. $373,200, to be entered in the form of a forfeiture money judgment.

26. If any of the property described in Paragraph 25, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant—

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 25 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

                                       LEAH B. FOLEY
                                       United States Attorney

                          By:   */s/ Kristen A. Kearney*
                               KRISTEN A. KEARNEY
                               Assistant U.S. Attorney

Dated: February 17, 2026